UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | |
|---|---|
| DANIEL PICHÉ, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) ) Civil No. 05-82-B-K |
| CORLISS NUGENT *et al.*, | ) ) |
| Defendants. | ) |

## MEMORANDUM OF DECISION[1]

In his complaint, the plaintiff, Daniel Piché, both individually and on behalf of the Estate of Lyne Laprise, alleges that defendant Enterprise Rent-A-Car Company of Boston, Inc. ("Enterprise") is jointly and severally liable for damages caused by the alleged negligent operation of a rental car, owned by Enterprise, and driven by defendant Corliss Nugent ("Nugent"), a California resident. The claim is based upon Maine's vicarious liability statute, 29-A M.R.S.A. § 1652. The issue raised by Enterprise's motion for partial summary judgment presents a choice of law question regarding the vicarious liability of a rental car company that rents a vehicle in New Hampshire to a resident of California who, while operating the vehicle in Maine, is involved in a motor vehicle accident with Canadians, the plaintiffs herein. In a motion for partial summary judgment, Enterprise asks the court to rule as a matter of law that New Hampshire law determines whatever duties Enterprise owes the plaintiffs and, therefore, that 29 M.R.S.A. § 1652 does not apply. I now **DENY** Enterprise's motion.

---

[1] Pursuant to 28 U.S.C. § 636(c), the parties have consented to have United States Magistrate Judge Margaret J. Kravchuk conduct all proceedings in this case, including trial, and to order entry of judgment.

## The Stipulated Material Facts[2]

Enterprise was the owner of a 2004 Mazda M3, 4-door motor vehicle that was being operated by Nugent at the time it was involved in a collision with a motorcycle operated by plaintiff Daniel Piché on U.S. Route 201 in Bingham, Maine, on August 8, 2004.  Enterprise registered the Mazda in New Hampshire.  The Mazda retained a New Hampshire registration from June 7, 2004, through and including the date of the accident, August 8, 2004.  When the Mazda was not being used by a renter, it was parked at Enterprise's Manchester, New Hampshire location.  Enterprise complied with New Hampshire's financial responsibilities laws regarding the Mazda.

Enterprise is a corporation organized and existing under the laws of Massachusetts and doing business, among other places, in both Maine and New Hampshire.  Enterprise operates 19 branches in Maine in 16 cities and towns and 30 branches in New Hampshire.  Enterprise was engaged in the business of renting motor vehicles *sans* chauffeurs when it rented the Mazda on August 6, 2004, at its Manchester location for Nugent to use on public ways.  Nugent requested and was expressly authorized by his contract with Enterprise to drive the Mazda in New Hampshire, Massachusetts and Maine.  At the time of the rental, Nugent was not an employee of Enterprise, nor was he acting as Enterprise's agent.  At the time of the rental, Nugent presented a valid California driver's license.  According to the terms of the rental agreement, Nugent was supposed to return the Mazda on August 13, 2004, to Enterprise's Manchester location.  Nugent is a resident of San Diego, California.  Mr. Nugent rented the vehicle at Enterprise in New Hampshire to drive to Solon, Maine, among other places.   Prior to the collision Mr. Nugent had traveled to Canada and was returning from Canada at the time of the collision.

---

[2]   The parties have jointly filed one stipulated statement of fact.  I set forth that stipulation and accept these facts as established.

Mr. Piché and Lyne Laprise, his wife and motorcycle passenger on the date of the collision, were at all relevant times residents of the Province of Québec, Canada. Prior to the collision, two vehicles in addition to Mr. Piché's motorcycle were stopped in front of Mr. Nugent's oncoming vehicle. Each of those vehicles was owned and operated by a Maine resident, and each was registered in the State of Maine. Mr. Piché's motorcycle was not registered in the State of Maine.

Mr. Piché and Ms. Laprise were initially treated for their injuries at Redington-Fairview General Hospital in Skowhegan, Maine. Ms. Laprise was subsequently transferred to Eastern Maine Medical Center in Bangor, Maine, where she was treated for her injuries. She died in Maine five days later.

## DISCUSSION

Maine, like Rhode Island and New York, has chosen to impose vicarious liability by statute on rental car companies. New Hampshire and Massachusetts, among other states, do not have vicarious liability statutes for rental car companies. New Hampshire follows the common law rule that an owner of a motor vehicle may be liable to a third-person for the operator's negligence under the doctrine of *respondeat superior*, Boissonnault v. Bristol Federated Church, 642 A.2d 328, 329-30 (N.H. 1994), or where the owner has negligently entrusted a vehicle to an incompetent driver, Chalmers v. Harris Motors Inc., 179 A.2d 447, 450 (N.H. 1962). The academic choice of law question posed by this case, whether Maine or New Hampshire law applies, is not a question likely to repeat itself in the future. On August 10, 2005, President Bush signed into law the Safe, Accountable, Flexible, Efficient Transportation Equity Act: A Legacy for Users ("SAFETEA-LU"), Pub. L. No. 109-59, 119 Stat. 1144. Among other things, the law amends U.S. Code Title 49, Chapter 301 to preempt state statutes that impose vicarious liability

on rental car companies for the negligence of their renters. However, the amendment does not preempt the application of 14 M.R.S.A. § 1652 to the facts of this case. The relevant text of the revised Chapter provides:

> Applicability and effective date. Notwithstanding any other provision of law, this section shall apply with respect to any action commenced on or after the date of enactment of this section without regard to whether the harm that is the subject of the action, or the conduct that caused the harm, occurred before such date of enactment.

49 U.S.C. § 30106(c). Thus, the long term policy debate has been resolved by the federal government. What remains for this court is to determine, under established choice of law principles, what law Maine state courts would apply to the facts of this particular accident, filed prior to the effective date of SAFETEA-LU.

Because this court's subject matter jurisdiction is based upon diversity of citizenship I must apply the choice of law rules of the State of Maine. Klaxon v. Stetnor Elec. Mfg. Co., 313 U.S. 487, 496-97 (1941). The fatal collision occurred in Maine and Ms. Laprise died in Maine. It cannot be doubted that Maine law generally provides the substantive rules of decision in this action. There is no dispute but that Maine's Wrongful Death Statute, 18-A M.R.S.A. § 2-804, governs the claims arising from Ms. Laprise's injuries and death and that Maine's common law of negligence sets the governing standard for Mr. Piché's individual claims. Nevertheless, Enterprise contends that 29-A M.R.S.A. § 1652 is not applicable because Mr. Nugent rented the Enterprise vehicle at the Manchester, New Hampshire airport.

Mr. Piché maintains that my job is an easy one. I need look no further than the language of the Maine statute to determine the choice of law. The vicarious liability statute is part of Chapter 13 of Maine Revised Statutes Title 29-A, which is entitled, "Financial Responsibility and Insurance." Pursuant to its plain language, Chapter 13 "applies to a person who is not a

4

resident of this State." 29-A M.R.S.A. § 1609(1)(A). The term "person" includes within its meaning, when applicable, a corporation. 29-A M.R.S.A. § 101(54). Therefore, because Enterprise is a Massachusetts corporation, 29-A M.R.S.A. § 1652 expressly applies by operation of § 1609(1)(A). Section 1652[3], in turn, provides:

> **1. Liability.** An owner engaged in the business of renting motor vehicles, with or without drivers, who rents a vehicle to another for use on a public way, is jointly and severally liable with the renter for damages caused by the negligence of the renter in operating the vehicle and for any damages caused by the negligence of a person operating the vehicle by or with the permission of the renter.

Enterprise responds to this opening salvo by pointing out that 29-A M.R.S.A. § 1609(1)(A) nowhere sets forth an express choice of law provision, such as the kind of provision that might be set forth in a contract and enforced by a court in the context of a contract dispute. I think Enterprise has the better part of this argument and I decline to resolve this choice of law dispute based on a finding that the language of Section 1609 mandates that this court apply Maine law to the question presented. Nevertheless, Mr. Piché's initial presentation affords context for the choice of law question: the Maine Legislature has announced an interest in imposing vicarious liability on out-of-state owners of rental vehicles that come to cause damage in Maine through the negligence of their operators and/or renters.

---

[3] Piché points out that the constitutionality of this statutory scheme is not open to challenge and, indeed, Enterprise has not challenged the statute's constitutionality. Justice Brandeis answered that question over seventy years ago. In Young v. Masci, 289 U.S. 253 (1933), a New York resident brought suit against a New Jersey resident who had given permission to his friend to drive his car from New Jersey into New York. The friend, driving in New York, struck and injured the plaintiff. A New York statute made the owner vicariously liable for damages caused by the negligence of those using the automobile "with the permission, express or implied, of such owner." Id. at 256. Justice Brandeis explained:
> When [the owner] gave permission to drive his car to New York, he subjected himself to the legal consequences imposed by that state upon [the borrower's] negligent driving as fully as if he had stood in the relation of master to servant. A person who sets in motion in one state the means by which injury is inflicted in another may, consistently with the due process clause, be made liable for that injury whether the means employed be a reasonable agent or an irresponsible instrument. The cases are many in which a person acting outside the state may be held responsible according to the law of the state for injurious consequences within it.

Id. at 258-59.

The parties are in agreement that absent a statutory choice of law provision Maine relies heavily upon the Restatement (Second) of Conflicts of Laws. Maine applies the "most significant contacts and relationships" test to choice of law questions in both tort actions and contract disputes. Flaherty v. Allstate Ins. Co., 822 A.2d 1159, 1166 (Me. 2003). In the personal injury setting, "the local law of the state where the injury occurred determines the rights and liabilities of the parties, *unless*, with respect to the particular issue, some other state has a more significant relationship . . . to the occurrence and the parties." Id. (quoting Restatement (Second) of Conflicts of Laws § 146 (1971)); see also Adams v. Buffalo Forge Co., 443 A.2d 932, 934 (1982) (first adopting this rule for "personal injury actions sounding in tort and involving products liability as well as . . . automobile negligence"). In order to find that a state other than Maine has a more significant relationship to the personal injury and the parties, a Maine court must consider "(a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered," all "according to their relative importance with respect to the particular issue." Id. (quoting Restatement (Second) of Conflicts of Laws § 145). With regard to each of these four contacts the court should mull an additional seven factors:

(a) the needs of the interstate and international systems,

(b) the relevant policies of the forum,

(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

(d) the protection of justified expectations,

(e) the basic policies underlying the particular field of law,

(f) certainty, predictability and uniformity of result, and

    (g)  ease in the determination and application of the law to be applied.

Flaherty, 822 A.2d at 1167; Restatement (Second) of Conflicts of Laws § 6.

    Enterprise concedes, as reason would dictate, that the first two § 145 contacts point directly to Maine but contends that the fourth of the § 145 contacts is pivotal: the place where the relationship, if any, between the parties is centered. Enterprise also passes over the third contact, describing it as "non-conclusive." (Mot. Part. Summ. J. at 7, Docket No. 15.) In Enterprise's view, the crucial contact is the contact that New Hampshire has with respect to the rental contract entered into between Nugent and Enterprise for use of a rental vehicle registered and parked in New Hampshire that was, pursuant to the rental contract, to be returned to New Hampshire. It is presumably in an effort to support an inference that the State of New Hampshire has <u>any</u> interest in this litigation that Enterprise asserts that it complied with New Hampshire's financial responsibilities laws regarding the vehicle. I confess that I have great difficulty even articulating what interest the State of New Hampshire has in this litigation. Searching Enterprise's memorandum for assistance in this regard, I find that Enterprise points to the New Hampshire legislature's "silence on the issue," an interest "in applying its law of owner responsibility," and an interest in "regulating companies that rent vehicles in its state." (<u>Id.</u> at 8-9.) The first suggestion does not aid Enterprise whatsoever. The latter two fly in the face of most of the Restatement § 6 factors. With regard to those factors, there are no interstate or international needs that undercut Maine's contacts and interest or enhance New Hampshire's. Nor would application of New Hampshire law in this circumstance promote ease, certainty or justified expectations[4] any more than would an application of Maine law. The two remaining § 6

---

[4]    Enterprise argues that its expectation in the application of New Hampshire law is more justified than any expectation Mr. Piché might have. (Mot. Part. Summ. J. at 9.) The stipulated record does not speak of expectations and summary judgment inferences are not to favor the movant. Thus, even if I were to infer what Enterprise's

factors concern the policy underlying the field of law and the relevant policies and relative interests of Maine and New Hampshire. Where personal injury is concerned, the presumptive policy of the "field of law" is that the local law of the state in which a personal injury occurs will apply. Flaherty, 822 A.2d at 1166. In any event, the alleged interests of, and contacts with, New Hampshire do not outweigh the far more direct and appreciable contacts that the injury and the parties have to the State of Maine or the interests that Maine has in seeing that its tort policies are applied to out-of-state owners of motor vehicles whose vehicles enter Maine and are instrumental in the infliction of personal injury and property damage on Maine roadways. Additionally, with respect to these very significant concerns, all three of the parties to this case have significant, not merely technical, contacts with Maine. Indeed, Enterprise's analysis ignores both its own and Nugent's contacts with Maine. Enterprise does business in Maine, is presumably aware of Maine's vicarious liability law, and authorized Nugent's operation of the car in Maine. Nugent's travel plans included Solon as a destination. The conduct causing the injury took place in Maine; it was not Nugent's rental agreement in New Hampshire that caused the injury, it was his operation of the vehicle in Maine. That operation was authorized by Enterprise and Enterprise should have been able to foresee a claim of this nature based on Nugent's indication that he would be traveling in Maine.

     Enterprise raises a concern over the parties' citizenship. Although this is a legitimate factor for the court to consider, the domiciles of Mr. Piché and the estate he represents and the domiciles of Nugent and Enterprise are of little assistance in this analysis because none of the parties resides in either Maine or New Hampshire and Enterprise operates in both states. These

---

expectations were at the time it rented its Mazda to Mr. Nugent, I would base my inference on the facts that Enterprise conducts business in Maine, is presumably knowledgeable of Maine law and was able to foresee that Mr. Nugent might be involved in a motor vehicle collision with a third party in Maine (most likely with a Maine resident).

circumstances negate the claim that New Hampshire law should have primacy. This case is unlike Collins v. Trius, Inc., 663 A.2d 570 (Me. 1995), in which residents of Quebec sued a Quebecois bus operator with whom they contracted in Quebec for a journey that was to start and end in Quebec over injuries sustained while passing through Maine. The contestants in that choice of law contest were all citizens of Canada, whose law limits non-pecuniary damages, and all could be said to have justifiable expectations that the bus operator's liability would be set in accord with Canada's "demonstrated . . . profound interest in achieving a measure of uniformity in tort recovery among Canadian residents." Id. at 573. Pivotal to the Law Court's resolution was the "one incontestably valuable" fact that "the parties [were] co-domiciliaries of the same state." Id. Here, none of the parties are domiciliaries of either Maine or New Hampshire and none are co-domiciliaries. The one thing that ties them all together is their mutual physical presence in the State of Maine on August 8, 2004. Next to the Maine legislature's expression of policy in § 1609(1)(A) and § 1652, that fact carries the most weight.

Enterprise attempts to dismiss the significance of the parties' mutual connection with Maine on the ground "that the place of collision was fortuitous." (Mot. Part. Summ. J. at 6.) Although there is some Maine precedent that would support a characterization of the *locus* of an automobile accident as a "fortuity," see Adams, 443 A.2d at 934-35, I fail to understand how Mr. Nugent's rental car and Mr. Piché's motorcycle could have come to collide elsewhere.[5] Enterprise cites comment e of the Restatement (Second) of Conflict of Laws § 145 in furtherance of its "fortuity" characterization. That comment does suggest that the place of injury will not be of appreciable significance when it is "fortuitous," but the comment offers as examples the kinds of injuries that arise from fraud and misrepresentation torts and "multistate defamation," as well

---

[5]  As legal concepts go, determining whether a historical fact was "fortuitous" or not strikes me as a vain enterprise. What is fortuitous is often a matter of perspective, if not personal philosophy. From the defendants' perspective, Mr. Piché's and Ms. Laprise's citizenship is as fortuitous as anything else in this case is.

as "[s]ituations . . . where the defendant had little, or no, reason to foresee that his act would result in injury in the particular state." An automobile accident is of markedly different character than fraud, misrepresentation and multistate defamation and the record reflects that Enterprise authorized Mr. Nugent to drive the rental car in the State of Maine, which is reason enough for Enterprise to foresee that negligent operation by Mr. Nugent in Maine, where Enterprise is a member of the business community, could lead to an accident with, and a personal injury action by, a third party.[6]

## CONCLUSION

Because Maine contacts and interests outweigh New Hampshire contacts and interests, I conclude that 29-A M.R.S.A. § 1652 applies and **DENY** Enterprise's motion.

## NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, and request for oral argument before the district judge, if any is sought, within ten (10) days of being served with a copy thereof. A responsive memorandum and any request for oral argument before the district judge shall be filed within ten (10) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

---

[6] The Restatement commentators assert in the very next paragraph of comment e that the state where injury occurs will usually supply the applicable law, "particularly . . . with respect to issues involving standards of conduct." Restatement (Second) of Conflicts of Laws § 145 cmt. e. Although the Maine Legislature has, in effect, imposed a duty on owners of rental vehicles to insure their vehicles for losses caused in Maine, the vicarious liability provision is what the law calls a "loss-allocation rule," which is generally regarded as being on the other side of the coin from a "standard of conduct." There is ample law on the distinction and its relevance to the choice of law question, particularly emanating from the state and federal courts of New York, but I do not consider the distinction to tip the scales toward New Hampshire under the circumstances of this case because there is no competing loss-allocation rule in New Hampshire (unlike in a case where each state's workers' compensation laws are in conflict) and because none of the parties are residents of New Hampshire. Thus, even if the State of Maine's interest is reduced to some degree by characterizing the statute at issue as a loss-allocation rule rather than a conduct-regulating rule, I cannot find on the facts of this case that New Hampshire's interest is any greater than Maine's and, therefore, I default to local law.

/s/ Margaret J. Kravchuk
U.S. Magistrate Judge

Dated: September 30, 2005